UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **CHRISTOPHER MURPHY,** : | |
| : | |
| *Plaintiff* : | |
| v. : | C.A. No. 22 - |
| : | |
| **CITY OF PROVIDENCE,** by and through: | |
| its Treasurer James J. Lombardi III, | |
| CPA, alias; and **FLAVIO TAVARES** alias, : | |
| individually and in his official capacity : | **Jury Trial Demanded** |
| as a police officer in the Providence | |
| Police Department, and **HUGH T.** : | |
| **CLEMENTS, JR.,** alias, individually : | |
| and in his official capacity as Chief : | |
| of the City of Providence Police : | |
| Department,  and **STEVEN M. PARÉ,** : | |
| alias, individually and in his official : | |
| capacity as Commissioner of Public : | |
| Safety for the City of Providence, : | |
| *Defendants* : | |

**COMPLAINT**

I.   **Introductory Statement**

1. This action is brought by Plaintiff Chris Murphy ("Plaintiff") seeking declaratory and injunctive relief and compensatory and punitive damages for acts and/or omissions of Defendants committed in violation of Plaintiff's rights, including freedom of speech, freedom from unreasonable search and seizure, both through false arrest and through the application of excessive force, and from malicious prosecution under the First, Fourth, and Fourteenth Amendments to the United States Constitution actionable pursuant to 42 U.S.C. §1983 and Article I, §§2, 6, and 21 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989), and under the laws of the State of Rhode Island.

## II.     Parties

2.     Plaintiff Christopher Murphy is a resident of the Town of Barrington, County of Bristol, and State of Rhode Island.

3.     Defendant City of Providence ("Defendant Providence" or "Defendant City") is a municipal corporation duly authorized and organized under the laws of the State of Rhode Island and is sued by and through its Treasurer, James J. Lombardi III, CPA, alias, the official designated by state law, R.I. Gen. Laws § 45-15-5, to be named in a suit for relief against Defendant City.

4.     Defendant Flavio Tavares, alias ("Defendant Tavares"), is sued individually and in his official capacity as a police officer in the Defendant Providence Police Department.

5.     Defendant Hugh T. Clements, Jr., alias, is sued individually and in his official capacity as Chief of the City Police Department.

6.     Defendant Steven M. Paré is sued individually and in his official capacity as Commissioner of Public Safety for the City.

## III.    Jurisdiction

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

## IV.    Venue

8.     Venue is proper in this Court insofar as, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.  Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

## V.     Material Facts

9.     On the evening of October 20, 2020, at approximately 6:00 p.m., Plaintiff arrived at Knight Memorial Library on Elmwood Avenue in Providence, to participate in a peaceful protest in honor of Jhamal Gonsalves ("Mr. Gonsalves").[1]

10.    Knight Memorial Library is approximately two miles north of the intersection of Bissell Street and Elmwood Avenue in Providence, the location of where Mr. Gonsalves injury took place.

11.    Plaintiff arrived at Knight Memorial Library alone and parked his car on a street adjacent to Elmwood Avenue.

12.    The speaking program for the protest took place for approximately 60-90 minutes.

13.    The protest and speaking program were peaceful and there were no reported incidents during this time.

14.    At the conclusion of the speaking program, at approximately 7:30 p.m., the group of protestors began to march down the street toward Downtown Providence.

15.    At approximately 8:00 p.m., the protest group arrived at the Providence Public Safety Complex ("the Complex") located on Dean Street in Providence where Defendant City of Providence's Police Department is Headquartered.

16.    Upon arriving at the Complex with the protest group, Plaintiff immediately noticed a barricade blocking the street leading to the entrance of the Complex and approximately two dozen police officers equipped with riot gear.

---

[1] Jhamal Gonsalves is a young man who was injured in a motor vehicle collision induced by Providence Police on October 18, 2020, two days prior. This protest took place in the context wherein over the spring and summer preceding the events at issue in this Complaint, the United States in general, including Providence, Rhode Island, was the scene of massive protests opposing police brutality, violence, racism, lack of accountability, and abuse of power.  Police across the United States, including police in Providence, responded to these protests by using violent and aggressive tactics against protestors, including the use of chemical weapons, physical violence, and baseless arrests.

17. The police were standing behind the barricade and many of them were holding large wooden clubs in front of their bodies.

18. There were multiple police cruisers parked behind the barricade, further separating the protest group from getting close to the Complex.

19. Upon arriving at the Complex, the protest group stood peacefully outside of the barricade and began another speaking program with various speakers using a bullhorn to address the crowd.

20. At this point, the position of the protesters in the street adjacent to the Complex was largely a consequence of the unprovoked police barricade and show of force situated on the adjacent sidewalk leaving no other location in the vicinity of the Complex where the protest group could congregate.

21. This speaking program lasted for approximately 30 minutes.

22. By 9:00 p.m., another group of two dozen *additional* Providence police officers in riot gear came outside and lined up *in front of* the barricade, on the same side as the protesters.

23. The additional police officers were also carrying large wooden clubs held in front of their person.

24. This made for a total of roughly fifty (50) Defendant City of Providence police officers equipped with riot gear including large wooden clubs.

25. This was roughly the same number of protesters remaining in the area, who were spread out as individuals or small groups and were mostly just standing around at this point.

26. At no time before this additional group of police appeared did anyone in the protest act in a disorderly or violent way and there was no apparent cause for this additional deployment of force.

27. At all times during the speaking protest and assembly of additional police, Plaintiff remained standing in the same place, among the front row of the group of peaceful protestors.

28. At no point did any police officer or any other agent of Defendant City announce any formal request for dispersal.

29. At the conclusion of the additional police coming outside and forming a line in front of the barricade, a protestor in a black hoodie put his hand on Plaintiff's shoulder and escorted him a few steps away from the barricade saying, "they will hurt you," while referring to the formation of police in riot gear.

30. Immediately after Plaintiff received that warning, the police in front of the barricade suddenly and without warning began to march in unison to push the protestors away from the Complex.

31. All of the police marching were wielding the wooden clubs along with visible zip-tie styled handcuffs and shouting, "Move!"

32. As the police marched and pushed protestors away from the Complex, Plaintiff was at all times compliant and continued to move further and further away from the Complex whenever police ordered people to move or moved themselves, always maintaining at least some distance from the police.

33. The police continued their march away from the Complex, stopping briefly at each intersection on Dean Street, traveling south toward Westminster Street.

34. When the police arrived at the intersection of Dean Street and Westminster Street, they stopped and stood in a line formation for approximately ten (10) minutes.

35. During those ten (10) minutes, traffic was not obstructed on Westminster Street as various cars drove by the police and protestors.

36. Plaintiff, upon observing that the police had stopped marching, also stopped marching away and instead stood several feet away from the police, with his back facing the police.

37. When the police began marching again, Plaintiff continued to move accordingly, moving in the direction the police were pushing protestors away from the Complex.

38. When the police began to march again, they turned right *onto* Westminster Street and stood in a line formation *across* Westminster Street, facing southwest, creating an obstruction to traffic.

39. Nevertheless, the police remained standing in line formation in the middle of Westminster Street while Plaintiff stood several feet away from them, directly in front of them.

40. When the police began marching again, in the direction of where Plaintiff stood Plaintiff began walking away from the police line again, as he had done previously.

41. However, at this point, Defendant Tavares ran toward Plaintiff, breaking away from the rest of the police line formation, and violently swung his wooden baton at the back of Plaintiff's head, striking Plaintiff and bringing Plaintiff down to the ground without any warning.

42. No Defendant City police officer, including Defendant Tavares, provided any warning or made any dispersal order before Defendant Tavares attacked Plaintiff.

43. Plaintiff did not have time to move out of the way of the attack, as he was simply walking away with his back towards the police line, and suddenly felt a blow to the back of his head from the baton of Defendant Tavares without any warning.

44. As the police continued to march past the Plaintiff, approximately three (3) officers remained behind to assist in the arrest of Plaintiff.

45. At least one of the officers had his or her full weight on Plaintiff while the other two officers attempt to restrain Plaintiff by the arms and legs.

46. While Plaintiff was on the ground, the police continued to direct traffic to drive around the scene of Plaintiff's arrest.

47. When Plaintiff was brought to the ground, he immediately placed his hands over his head to protect himself from further strikes from the police, which Plaintiff legitimately feared after already being struck once in the head.

48. When the police shouted a command for Plaintiff to show his hands, Plaintiff did not resist, but immediately complied, allowing the police officers to move his arms behind his back, at which point the police were in complete control of his body.

49. The police then placed zip-tie style handcuffs on Plaintiff and ordered him to get up.

50. Because Plaintiff was having difficulty getting off the ground while handcuffed, a couple of officers grabbed Plaintiff and lifted him onto his feet.

51. The police then escort Plaintiff to an empty police-marked van with no windows and ordered him inside.

52. Plaintiff was the first person ordered into the van.

53. After approximately a minute, a second person was imprisoned in the van.

54. After approximately another two minutes later, the police violently threw a third person into van, who was bleeding heavily and thrown into Plaintiff's lap.

55. Ultimately, another two people were arrested and thrown into the back section of the van, bringing the total number of arrestees to five (5).

56. Plaintiff and the four other arrestees were in the cramped, windowless van for over an hour.

57. During this time, Plaintiff noticed his hands beginning to feel numb due to how tightly the handcuffs had been placed on him.

58. Plaintiff also began feeling dazed, disoriented, and was having trouble breathing.

59. During the hour within the van, one of the other people in the van began to show symptoms of having a seizure.

60. The other three arrestees began banging and calling for medical attention, yelling that one of the arrestees was having a seizure, but they were ignored, and no police officers responded to their desperate pleas for medical attention.

61. Plaintiff was experiencing symptoms of a concussion and was having difficulty breathing, so he did not yell for police aid.

62. At the conclusion of the hour, the van arrived at the Complex for the arrestees to be "booked."

63. The police escorted four of the arrestees out of the van, including the Plaintiff and placed them into a cell together before bringing them to an elevator to an upper level to begin the "booking" process.

64. The fifth arrestee, who appeared to have a seizure, remained in the van, seemingly unconscious.

65. While being processed, Plaintiff explained to an officer that he had a seizure disorder and wanted to seek medical attention.

66. In response, Plaintiff was told that he could go to the hospital, but if he chose to do that, he would not be released from custody until Thursday, two days later.

67. Plaintiff therefore decided not to go to the hospital so that he could be released as soon as possible.

68. After being processed, Plaintiff was informed he could only wear one article of clothing (not including pants), so the Plaintiff chose to keep his hoodie and turned over a t-shirt he was wearing underneath.

69. Plaintiff was escorted to a cell where he was placed by himself and spent the night.

70. Plaintiff continued to feel disoriented and dry heaved in his cell, a well-documented symptom of a concussion.

71. At no point was Plaintiff given an opportunity to see a bail commissioner or to otherwise arrange for bail.

72. The next morning, the Plaintiff was escorted to the Sixth Division District Court at the Garrahy Judicial Complex in downtown Providence where he was arraigned.

73. Plaintiff was ultimately released from police custody at approximately 1:00 p.m., about 16 hours after his arrest.

74. Plaintiff was charged with Disorderly Conduct and Resisting Legal or Illegal Arrest.

75. When Plaintiff was released from custody, he went to Miriam Hospital to be evaluated.

76. Plaintiff had an MRI of his head, and x-rays of his left ankle and right side of his ribs.

77. A week later, Plaintiff saw an orthopedist for severe pain in his left knee, that was diagnosed as a deep knee bruise as a result of the assault and arrest by Defendants.

78. The charges against Plaintiff were either dismissed pursuant to rule 48(a), in the case of the resisting arrest charge, or filed with a plea of not guilty, in the case of the disorderly conduct charge.

*Municipal Liability*

79. As detailed above, Defendant City police apparently were and currently remain unaware of the constitutionally protected rights of individuals to be free from illegal search and

seizure, including freedom from excessive force.

80. On information and belief, this lack of awareness is widespread among Defendant City police officers.

81. On information and belief, based on a Police Academy Curriculum used by Defendant City and sworn testimony, of eight hundred plus (800+) hours of Academy training, only three (3) to thirteen (13) hours are spent on training in anything remotely relevant to understanding, respecting, and protecting the civil and constitutional rights of citizens, and such training is the only constitutional and civil rights training officers receive before or during their employment with Defendant City's Police Department.

82. This lack of knowledge on the part of officers has continued despite a series of recent lawsuits in which the Defendant City has been sued for the same or similar Fourth Amendment and free speech violations. *See e.g. Reilly v. Providence*, No. CA 10-461 S, 2013 WL 1193352 (D.R.I. Mar. 22, 2013); *Prince v. Providence*, C.A. No. 15-378M (D.R.I); *Kurland and Gould v. Providence*, C.A. No. 14-0524-WES-PAS (D.R.I); *Pombo v. Providence*, C.A. No. 1:15-cv-00291-ML-LDA (D.R.I); *Kurland v. Providence*, C.A. No. 18-cv-00440-MSM-LDA, two of which resulted not only in settlements but a consent decree or stipulation outlining proper constitution limits to policing of protesters and/or civilians exercising their first amendment rights.

83. Per the sworn testimony of Defendant City police officers, Defendant City, Defendant Clements, and Defendant Paré have taken no action to properly supervise and/or notify, educate, and/or train City police officers relative to the rights of citizens to peaceably exercise First Amendment rights in public forums such as streets, sidewalks, and parks without law enforcement or other governmental interference.

84. Indeed, per the sworn testimony of Defendant City police officers, Defendants

City, Clements, and Paré generally provide no information about the filing of suits against Defendant City police officers and Defendant City police department either when the cases are filed or when they are resolved, even in the case of resolution via a court sanctioned consent decree declaring the law or imposing prospective obligations on the Defendant City police department.

85.     Per the sworn testimony of Defendant City police officers, Defendants City, Clements, and Paré certainly took no action and provided no direction or training to prevent repeat of this unlawful behavior on the part of Defendant City.

86.     Indeed, per the sworn testimony of Defendant City police officers, Defendants City, Clements, and Paré, it seems that no officer has even been disciplined, retrained, or ever spoken to about these issues and at least some officers have been promoted.

87.     Defendant Clements has, in sworn testimony, endorsed the unlawful behavior of Defendant City police officers interfering with the peaceable exercise of First Amendment rights in public forums such as streets, sidewalks and indicated that he believes they should continue to act in this unlawful manner.

88.     Defendants Clements has also indicated in sworn testimony that he and Defendant Paré are the chief policy making officials for the Defendant City's Police Department.

89.     Defendant City failed to properly select, train, instruct, supervise, and/or discipline its police officers relative to the rights of individuals provided under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure in public forums and the application of excessive force.

90.     On information and belief, during all relevant time periods, a custom or policy existed in the Defendant City Police Department wherein the Defendant City acquiesced to, permitted, condoned, encouraged, and/or was deliberately indifferent to the deprivation of

constitutionally protected rights of individuals caused by unreasonable search and seizure in public forums and the application of excessive force.

91. Defendants knew or should have known that under the circumstances and based on well-settled law, it was unlawful for Defendants to seize and subject Plaintiff to the application of excessive force, particularly insofar as Plaintiff was in a public forum and immediately complied and submitted to the commands of Defendant Tavares and others.

92. Despite such knowledge, Defendant Providence, by and through its policy-making officials and agents, approved, acquiesced to, condoned, intentionally ignored, and/or were deliberately indifferent to such practices, and failed to change or eliminate such unlawful customs or policies.

### *Intentional Conduct*

93. At all relevant times, Defendants acted intentionally, willfully, maliciously, and/or with deliberate, reckless, or callous indifference to Plaintiff's clearly established constitutional rights.

94. Furthermore, at all relevant times, Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's clearly established constitutional rights.

95. At all relevant times, Defendants were motivated by malice, wantonness and/or willfulness of an extreme nature.

### *Harm and Damages*

96. As a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, Plaintiff has suffered and will continue to suffer personal injury, pain and suffering, emotional distress, continuing fear of excessive force

being employed against him, loss of income, loss of liberty, injury to his reputation, deprivation of his constitutional and common law rights, and has been forced to incur expenses for legal services.

## VI. Claims for Relief

97. Plaintiff incorporates in the counts below the allegations contained in ¶¶ 1 through 96 above.

### COUNT ONE
*Violation of the Fourth and Fourteenth Amendment Right to be Free From Unreasonable Search and Seizure Actionable Pursuant to 42 U.S.C. § 1983*

98. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff's right to be free from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

### COUNT TWO
*Violation of Right to be Free From Unreasonable Search and Seizure in Violation of Article I, §6 of the Rhode Island Constitution*

99. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff's right to be free  from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, § 6 of the Rhode Island Constitution, actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

### COUNT THREE
*Impairment of Freedom of Assembly and Speech in Violation of the First and Fourteenth Amendments, Actionable Pursuant to 42 U.S.C. § 1983*

100. Defendants, acting under the color of state law, by their individual and/or

concerted acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of and/or placed unlawful restrictions on Plaintiff's freedom of expression in violation of Plaintiff's right to assemble and/or exercise other First Amendment rights on public sidewalks and in other public fora, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

### COUNT FOUR
*Impairment of Freedom of Assembly and Speech in Violation of Article 1, § 21 of the Rhode Island Constitution*

101.    Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of and/or placed unlawful restrictions on Plaintiff's freedom of expression in violation of Plaintiff's right to assemble and/or exercise other First Amendment rights on public sidewalks and in other public fora, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, § 21 of the Rhode Island Constitution, actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

### COUNT FIVE
*Malicious Prosecution in Violation of the Fourth, Fifth, and Fourteenth Amendments, Actionable through 42 U.S.C. § 1983*

102.    Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have caused criminal charges to be brought and prosecuted against Plaintiff without probable cause and with malice, which were terminated in favor of the Plaintiff, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT SIX
*Malicious Prosecution in Violation of Article 1, §§ 2, 6 and 7
of the Rhode Island Constitution*

103.  Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have caused criminal charges to be brought and prosecuted against Plaintiff, without probable cause and with malice, which were terminated in favor of the Plaintiff, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §§ 2, and 6 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

## COUNT SEVEN
*Common Law Assault*

104.  Defendants, by their acts and/or omissions, including but not limited to those described herein, placed Plaintiff in reasonable fear of imminent bodily harm, and thereby committed an assault upon Plaintiff, causing Plaintiff to sustain harm as aforesaid.

## COUNT EIGHT
*Common Law Battery*

105.  Defendants, by their acts and/or omissions, including but not limited to those described herein, intended to cause and in fact caused a harmful and offensive touching of and trauma upon Plaintiff's body without consent or privilege, and thereby committed a battery upon Plaintiff, causing Plaintiff to sustain harm as aforesaid.

## COUNT NINE
*Common Law False Arrest and False Imprisonment*

106.  Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, intentionally imposed by force and/or threats an unlawful restraint on Plaintiff, arresting him without probable cause and restraining his freedom of movement and restricting his liberty, including handcuffing him, locking him in a police van,

and holding him in a detention cell, all without legal reason or justification, while Plaintiff was at all times conscious of his confinement, in violation of the common law, causing Plaintiff to suffer harm as aforesaid.

## VII. Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A declaratory judgment that the actions of Defendants complained of herein violated Plaintiff's right to be free from unreasonable search and seizure, including freedom from excessive force, and constituted, assault, battery, and false arrest.

2. A declaratory judgment that the policies and practices of the Defendant City complained of violated Plaintiff's right to be free from unreasonable search and seizure, including freedom from excessive force, and constituted assault, battery, and false arrest.

3. A declaratory judgment that the Defendants, in the manner described herein, violated Plaintiff's right to assemble and/or exercise other First Amendment rights on public sidewalks and in other public fora protected under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and under Article 1, § 21 of the Rhode Island Constitution, actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

4. A declaratory judgment that the Defendants, in the manner described herein, violated Plaintiff's right to be free from malicious prosecution under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, Article 1, §§ 2 and 6 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989), and under the laws of the State of Rhode Island.

5. Preliminary and permanent injunctions directing the Defendant City Police Department to properly select, train, instruct, supervise and/or discipline officers with regard to the rights of individuals to be free from unreasonable search and seizure, including freedom from the application of excessive force.

6. An award of compensatory damages.

7. An award of punitive damages.

8. An award of reasonable attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988.

9. Such other and further relief as this Court deems just and proper.

## VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Date: March 21, 2022**  /s/ **Richard A. Sinapi**
**Richard A. Sinapi, Esq. (#2977)**
**Chloe A. Davis, Esq. (#9334)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690;
FAX: (401) 739-9040
Email: ras@sinapilaw.com; cad@sinapilaw.com